UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVIE L. JONES,

               Plaintiff,

v.

UNKNOWN COLLINS, *et al.*,

               Defendants.

_____/

Case No. 1:15-cv-1212

Hon. Robert J. Jonker

### REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by a state prisoner in the custody of the Michigan Department of Corrections (MDOC) pursuant to 42 U.S.C. § 1983. This matter is now before the Court on defendants' motion for summary judgment for lack of exhaustion and Eleventh Amendment immunity (docket no. 10).

### I.  Background

Plaintiff's complaint is essentially one for retaliation against four MDOC employees at the Carson City Correctional Facility (DRF):  Property Room Sgt. Gary Collins; Assistant Resident Unit Manager (ARUM) Chad Williams; Corrections Officer (CO) Michael Schafer; and Resident Unit Manager (RUM) William Andersen.  Plaintiff has sued all defendants in their personal capacities, and defendants Collins and Andersen in their official capacities.

Plaintiff's claims arise from the following incidents which occurred at DRF.  On November 2, 2014, plaintiff was moved from Level I to Level IV pending a misconduct hearing for fighting.  Compl. (docket no. 1, PageID.4).  Plaintiff was found guilty on November 5th, "waived to Level IV," and received a sanction of 12 days' loss of privileges (LOP).  *Id*.  On November 6th,

plaintiff reported to the DRF property room where a non-party CO issued some of plaintiff's state issued property and told plaintiff that his personal property was in a bag labeled "Excess property/Contraband" and would be handled by Sgt. Collins. *Id.* On November 7th, plaintiff told ARUM Williams that he was not provided with all of his state issued property or any of his personal property. *Id.* Williams said he would look into it. *Id.* Sgt. Collins never responded to plaintiff's kites on November 10th and 17th regarding the property. *Id.* Plaintiff asked ARUM Williams about his property on November 18th without success. *Id.* at PageID.4-5. Williams stated that he would handle the property issue on December 5th. *Id.* at PageID.5. However, Williams did not address plaintiff's property issue and on December 8th told plaintiff to stop bothering him about it. *Id.*

Plaintiff filed a grievance on December 9th. During the grievance interview with Sgt. Collins on December 11th, Collins gave plaintiff the rest of his state issued property but refused to give plaintiff his personal property and stated that he would confiscate it because it was labeled as contraband. *Id.* Plaintiff told Collins that he would be filing a grievance, which he did that evening, grievance DRF 2014-02662-19z ("2662"). *Id.* Plaintiff received a response to the grievance on January 12, 2015. *Id.* at PageID.6. On that same date, plaintiff mailed "Administrative Notices" to a number of MDOC employees, including Sgt. Collins and ARUM Williams, stating that Collins and Williams "conspired to retaliate against him for exercising his right to file grievances against them." *Id.* On January 13th, plaintiff sent through institutional mail copies of "Internal Affairs Investigation Requests and Civil Service Commission Staff Misconduct Complaints" against Collins and Williams. *Id.*

On January 16th, plaintiff went to ARUM William's office to mail the notices and complaints by "expedited legal mail," at which time Williams made sarcastic comments to plaintiff

about playing "the grievance and complaint filing game." *Id*. at PageID.7.  Later that day, CO Schafer came to plaintiff's cell announcing a shakedown, again referring to "the grievance and complaint filing game." *Id*.  After the shakedown, plaintiff found his typewriter damaged. *Id*. Shortly thereafter, he was escorted out of the cell where he was given a Class I charge of "Possession of Dangerous Contraband / Possession of Weapon." *Id*.   The misconduct report identified the weapon as "a Razor Blade attached to a White Plastic Tube about 5 inches long" found inside plaintiff's mattress.  Misconduct Report (docket no. 5-2, PageID.100).  Plaintiff pled not guilty and stated that CO Schafer planted the weapon on behalf of Sgt. Collins and ARUM Williams in retaliation for plaintiff filing his grievances and complaints.  Compl. at PageID.7.

At the January 27th misconduct hearing, plaintiff was found guilty of possession of a weapon. *Id*. at PageID.8.   The dangerous contraband charge was dismissed and a sanction of 10 days detention in punitive segregation was imposed with an additional 30 days LOP. *Id*.[1]  On February 1st, plaintiff filed the Step II appeal on grievance 2662. *Id*.  On February 3rd, after meeting with the Security Classification Committee (which included defendant RUM Andersen), plaintiff was re-classified to the Level IV general population, even though he "expressed his reasonable fear that further retaliation would occur if sent back to general population anywhere at (DRF)." *Id*.

On February 4th, RUM Andersen spoke with plaintiff. *Id*. at PageID.9. When plaintiff asked if Collins, Williams and Schafer had been fired, Andersen said that plaintiff should not have filed the grievance and complaints. *Id*.  On February 6th, plaintiff was ordered to pack to return to the Level IV general population. *Id*.  When plaintiff said he was "fearful and too scared to

---

[1] The dangerous contraband charge was dismissed because only one item was found in the mattress and it fit the definition of a weapon, not of dangerous contraband.  Misconduct Hearing Report (docket no. 5-2, PageID.111).

return to any level here at (DRF)," the CO stated that he would issue plaintiff a misconduct for disobeying a direct order (DDO) and that if plaintiff "continued to refuse and file more grievances, (RUM) Anderson [sic] would initiate a transfer to the Upper Peninsula." *Id*. At the misconduct hearing for the DDO held on February 12th, plaintiff pled not guilty "due to his reasonable fear of further retaliation." *Id*. However, the hearing officer found plaintiff guilty. *Id*.

On that same day, plaintiff filed another grievance, DRF 2015-02-00416-17B ("416"). *Id*. Plaintiff did not allege the substance of the grievance. Although this lawsuit is based upon the grievance, neither plaintiff nor defendants have provided the Court with a copy of the grievance or the Step I response to the grievance. On February 16th, plaintiff kited the grievance coordinator because he had not received a grievance receipt or identification number. *Id*. at PageID.10. That same day, RUM Andersen expressed his displeasure about being named in Grievance 416 and threatened to transfer plaintiff "up North." *Id*. On February 19th, plaintiff was transferred to Level IV at the Chippewa Correctional Facility (URF) located in the Upper Peninsula. *Id*.

In his complaint, plaintiff set forth five causes of action. Count One alleged retaliation against Collins, Williams and Schafer "for conspiring to plant a dangerous weapon and issue false misconduct" in violation of his First Amendment rights. Count Two alleged retaliation against Collins, Williams and Schafer for the same conspiracy. Count Three alleged that RUM Andersen retaliated against plaintiff. Count Four alleged that the transfer to URF was retaliatory. Finally, Count Five alleged that the actions of defendants "in causing and conspiring to cause Plaintiff the aforementioned mental and emotional distresses violated 42 U.S.C. section 1983 and Michigan Tort Law." *Id*. at PageID.12-14. Plaintiff seeks compensatory and punitive damages. *Id*.

4

## II.      Defendants' motion for summary judgment

### A.      Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

## B.    Failure to Exhaust

### 1.    Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.  One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.  This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2.    MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007).  A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ P.  If the issue is not resolved,

6

then the grievant may file a Step I grievance on the prescribed form within five business days after

the grievant attempted to resolve the issue with appropriate staff.  *Id.* at ¶¶ P and R.  The Policy

Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.  Information provided is to be
> limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where,
> why, how).  Dates, times, places and names of all those involved in the issue being
> grieved are to be included.

*Id.* at ¶ R (emphasis in original).  The prisoner must send the Step I grievance to the appropriate

grievance coordinator.  *Id.* at ¶ V.  If the prisoner is dissatisfied with the Step I response, or does not

receive a timely response, he must request the appropriate form and send it to the Step II Grievance

Coordinator.  *Id.* at ¶ BB.  Finally, if a prisoner is dissatisfied with the Step II response, or does not

receive a timely response, he must send a completed Step III grievance, using the appropriate form,

to the Grievance and Appeals Section.  *Id.* at ¶ FF.

### 3. Discussion

In their reply brief, defendants set forth a summary of the what occurred with respect

to grievance 416:

> On February 12, 2015, Jones grieved the retaliatory acts under grievance
> identifier DRF-15-02-4161-17b [sic].  (R. 1, Compl. at 6, PageID.6; R. 11-2, Br. in
> Supp. Ex. 1 (Step III Grievance Report) at 16, PageID.237.)  The Step I grievance
> was received and processed on February 18, 2015, at DRF; after an extension, the
> Step I response was due April 1, 2015. (R. 11-2 at 16, PageID.237.)  Jones claims
> that he never received a response to his Step I grievance.  (*Id.* at 15, PageID.236.)
> In that scenario, pursuant to MDOC policy, Jones had ten business days from when
> the response was due - i.e., April 15, 2015 - within which to file a completed Step II
> grievance appeal form. (*Id.* at 16, PageID.237; R. 11-3, Br. in Supp. Ex. 2 (MDOC
> P.D. 03.02.130) at 6, PageID.255.)  Jones did not mail a request for the Step II form
> until April 14, 2015.  (R. 11-2 at 16, PageID.237.)  On April 21, 2015, the DRF
> grievance office mailed the Step II form to Jones at URF; the Step II form explicitly
> stated that Jones needed to submit his appeal by April 30, 2015, and that he must
> attach a copy of the Step I form.  (*Id.*)  The DRF grievance office did not receive the

Step II form until May 8, 2015, and Jones did not attach a copy of the Step I form. (*Id*. at 13 & 16, PageID.234 & 237.)  On May 20, 2015, the DRF grievance office returned the Step II grievance appeal response denying Jones' grievance. (*Id*.)

On June 4, 2015, the MDOC central office received an incomplete Step III grievance appeal from Jones.  (*Id*. at 13, PageID.234.)  On June 17, 2015, the MDOC central office returned all the materials Jones submitted; the accompanying cover letter stated that Jones "must include a readable/completed Step I Grievance Form (CSJ-247A 47A)" and "must include the Step I response(s) or give reason why it cannot be included."  (*Id*. at 12 & 14, PageID.233 & 235.)  On June 30, 2015, the MDOC central office received a second incomplete Step III grievance appeal from Jones.  (*Id*. at 12, PageID.233.) On August 26, 2015, the MDOC central office issued its Step III grievance appeal decision, stating that Jones had "not filed a complete appeal to this Office within 10 business days of receiving the Step II response," and that the "Step III appeal is rejected as being untimely submitted to Step III." (*Id*.) The decision further stated that Jones had "failed to exhaust the administrative remedies provided" to him by the MDOC.  (*Id*.)

Defendants' Reply (docket no. 17, PageID.294-295).

In summary, defendants contend that the Step II grievance was denied because it was late, and the Step III grievance was also rejected as untimely.  In the May 19, 2015 Step II response, DRF Warden Stoddard set forth the following dates regarding plaintiff's grievance and his transfer to URF:

| | |
|---|---|
| 2/18/2015 - | Step I received and processed at DRF with a due date of 3/11/2015 |
| 2/19/2015 - | Transfer to URF |
| 3/11/2015 - | Step I extension requested and granted with new due date of 4/1/2015 |
| 4/13/2015 - | Kite written for request for Step II appeal (due to no response at Step I) |
| 4/14/2015 - | Kite for Step II appeal form mailed out from URF (see attached envelope) |
| 4/21/2015 - | Step II appeal form mailed to you at URF with due date back of 4/30/2015 on form |
| 05/8/2015 - | Step II appeal form received at DRF Grievance Office and processed |

Step II Response (docket no. 11-2, PageID.237).

8

Conspicuously absent from the time line and the exhibits provided by defendants is the Step I response to plaintiff's grievance which should have been generated by April 1, 2015. While defendants note that "after an extension, the Step I response was due April 1, 2015" they have failed to provide the Court with a copy of that response or an explanation as to what occurred. Under Policy Directive 03.02.130 ¶ BB, plaintiff should have filed the Step II appeal within 10 business days after the Step I response was due. However, the MDOC waived this requirement when it sent plaintiff a Step II Appeal form and granted him an extension of time through April 30, 2015. In an affidavit attached to his complaint, plaintiff stated that he did not receive the Step II grievance form for grievance 416 until the evening of April 29, 2015, and acknowledged that the form had "a due date of April 30, 2015." Jones Aff. (docket no. 1-1, PageID.19); Step II Appeal (docket no. 11-2, PageID.234).

Based on this record, genuine issues of material fact exist as to whether plaintiff properly exhausted his grievance. First, the Step II response notes that the Step II Appeal form was mailed to plaintiff at URF on April 21, 2015. On the Step II Appeal form, plaintiff stated that he did not receive the form at URF on April 29, 2015, and repeated this claim in his Step III Appeal stating,

> Respondent's continuously placed Grievant at disadvantage in this grievance: (1) No STEP I RESPONSE & (2) sending STEP II with **one day** to submit to Grievance Coordinator through U.S. mail.

Step II and III Appeal at PageID. 234 (emphasis in original). The Step II response states that plaintiff's appeal was untimely because it was not received until May 8, 2015, a date which "is well outside additional days due to locking at another facility at this time." Step II Response at PageID.237. A factual issue exists with respect to when plaintiff received the form at URF and if he plaintiff had sufficient time to respond.

9

Second, plaintiff stated that he sent the goldenrod copy of the grievance with the Step II Appeal, a claim which defendants deny. *See* Jones Aff. at PageID.19; Defendants' Reply at PageID.294. While defendants cite the Step II Response as the authority for this omission, that response did not state that plaintiff failed to provide a copy of the original grievance. Step II Response at PageID.237.

Third, based on plaintiff's statement that he mailed the Step II Appeal on April 30, 2015, it is unclear whether this action was a timely submission based on the Step II Appeal form which states:

> If you should decide to appeal the Step I grievance response to Step II, your appeal should be directed to: GC Office by 4/30/15. If it is not submitted by this date, it will be considered terminated.

*See* Step II Appeal at PageID.234. Based on this language, it would appear that the form was submitted when plaintiff mailed it on April 30, 2015.

In addition, plaintiff's grievance was rejected at Step III as untimely and as an incomplete submission lacking the Step I grievance and the Step I response. *See* Step III Response (docket no. 11-2, PageID.233). This response raises the continuing dispute regarding the missing Step I grievance and Response.

For these reasons, genuine issues of material fact exist as to whether plaintiff properly exhausted grievance 416. Accordingly, defendants' motion for summary judgment should be denied with respect to this claim.

## C.     Eleventh Amendment immunity

Plaintiff's official capacity claims against Collins and Andersen are barred by Eleventh Amendment immunity. *See Will v. Department of State Police*, 491 U.S. 58, 64-71 (1989);

*Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) ("the Eleventh Amendment bars § 1983 suits

seeking money damages against states and against state employees sued in their official capacities").

Accordingly, defendants Collins and Andersen's motion for summary judgment should be granted

as to the "official capacity" claim.

### III.   Recommendation

For these reasons, I respectfully recommend that defendants' motion for summary

judgment (docket no. 10) be **GRANTED** with respect to the official capacity claims asserted against

defendants Collins and Andersen and **DENIED** in all other respects.


Dated:  March 3, 2017                         /s/ Ray Kent
                                              RAY KENT
                                              United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk
of the Court within fourteen (14) days after service of the report.  All objections and responses to
objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections
within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474
U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).